# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES ALBERT BARKER, III,

                Plaintiff,

v.

BRIAN VANSCYOC, DONALD
VANDERVEST, THOMAS KNAUS,
PATRICIA J. HANSON, HALEY JO
JOHNSON, SAMUEL
CHRISTENSEN, TRACEY KUTCH,
AMY VANDERHOEF, VICTORIA
WORDEN, CATLYN PRESSER,
BRIAN GRAZIANO, DAVID
SALDANA, MARK NIELSEN, FAYE
FLANCHER, RACINE COUNTY, and
WALWORTH COUNTY,

                Defendants.

Case No. 18-CV-253-JPS

**ORDER**

---

       This case concerns claims by Plaintiff, James A. Barker, III ("Barker"), that a large group of police officers, attorneys (both his and the government's), state court clerical staff, and even a state judge, violated his constitutional rights. His story begins with searches of his parents' and girlfriend's homes and his store in April 2015 and culminates in ongoing state court criminal proceedings brought against him in Racine County Circuit Court, *State of Wisconsin v. James A. Barker III*, Case No. 2015CF0627. Put simply, Barker seeks to remove the state criminal prosecution to federal court and redress what he views as systemic misconduct occurring in connection with the state case. Defendants have filed motions to dismiss the complaint. (Docket #11, #16, #22, #25). The motions are fully briefed and, for

the reasons stated below, they will be granted in large measure. Additionally, the Court will stay the case as to the surviving claims in light of the ongoing, parallel state criminal proceedings.

1.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81. The Court is obliged to give a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

2.    **RELEVANT FACTS**

The following facts are drawn from the amended complaint, (Docket #10), which is presently the operative complaint in this case.[1] The complaint

---

[1]After the close of briefing on Defendants' motions, Barker filed a motion requesting an evidentiary hearing to prove his allegations. (Docket #33). He cites no rule or other authority entitling him to such a hearing. Moreover, because the Court is required under the applicable standard of review to accept Barker's factual allegations as true and draw all reasonable inferences in his favor, there is no need for such a hearing. Barker need not prove his claims with evidence at this juncture. Every fact the Court might need to resolve the pending motions is contained in Barker's amended complaint. He could not expand on those

is prodigiously long, comprising 185 paragraphs stated in twenty-three single-spaced pages. The Court's disposition of most of the issues does not turn on the finer details of Barker's complaint, so the Court will confine itself to a general overview of the facts.

Early in the morning on April 23, 2015, officers of the Racine County Sheriff's Department executed an unsigned no-knock search warrant at the residence of Barker and his parents. *Id.* at 3. They were investigating Barker as a potential participant in a theft conspiracy. *Id.* The search warrant was premised on the affidavit of officer Brian Vanscyoc ("Vanscyoc"), who averred in part that Barker had been involved in an armed assault. *Id.* Barker denies involvement in any theft or assault and says that affidavit was fabricated to support a finding of probable cause for the search. *Id.* at 7–8. The officers seized surveillance equipment on the property maintained by Barker's father, which Barker believes captured the police officers' misconduct. *Id.* at 3, 16.

Barker was not at home during the search; he was at his girlfriend's house. *Id.* at 3. Barker's father called him at the officers' request to tell him to come into the police station for questioning. *Id.* He agreed, but then was apprehended outside his girlfriend's house anyway. *Id.* He says he was immediately taken to the Racine County Jail on a probation hold *Id.* That same day, officers searched Barker's girlfriend's home and found a quantity of THC. *Id.* at 4–5. At some unspecified time later, officers also searched a store Barker owns and operates. *See id.* at 5–6. Although not clear from the

---

allegations in a hearing, for the present motions challenge the sufficiency of the facts as claimed within the four corners of the complaint. *Hill v. Trustees of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir. 1976). Thus, the request for a hearing will be denied.

allegations of the complaint, it seems that Vanscyoc's averments may have been used to support the issuance of all the warrants implicated in Barker's case. *See id.* at 7–8. Another officer, Donald Vandervest ("Vandervest"), may also have submitted an affidavit in connection with the warrants. *See id.* at 12. Barker claims that all of the search warrants—he says there were eight in total—were unsigned, uncertified, and unsworn, bore the wrong dates, were full of typographical errors, and had attached affidavits that referred to crimes having nothing to do with him. *Id.* at 6.

On April 27, 2015, a criminal complaint was filed against Barker in Racine County Circuit Court, Case No. 2015CF0627, charging him with (1) theft, (2) possession of THC, and (3) possession of drug paraphernalia. On May 6, 2015, Barker waived his right to a preliminary hearing, the state court found probable cause supported the charged crimes, Barker was bound over for trial, he was arraigned, and a not guilty plea was entered. Barker was represented by attorney David Saldana ("Saldana") and the State was represented by Racine County Deputy District Attorney Patricia Hanson ("Hanson").

Barker sets out a large body of allegations of misconduct by investigators and state prosecutors in connection with his prosecution. First, he catalogs the reasons he thinks that the State's case is baseless. For instance, he believes that the interviews with his co-defendants exonerate him, and he challenges the search warrants as defective and therefore void. *See id.* at 4–6. Barker also complains that he did not receive copies of some or all of these warrants until well into his criminal prosecution. *Id.* Those copies which he did receive slowly over time were still rife with errors and deficiencies. *Id.* at 7–8.

In addition, Barker contends that Vanscyoc and Hanson conspired to plant the THC in Barker's girlfriend's home in order to secure a conviction or probation revocation, since they learned from his co-defendants that he was not, in fact, part of the theft ring. *Id.* He points to what he believes is suspicious back-dating of reports and a prolonged delay between the seizure and inventory of the THC. *Id.* Additionally, Barker alleges that Thomas Knaus ("Knaus"), another investigator, claimed in his report that it was he, not Vanscyoc, that seized the THC. *Id.*

Another major theme in Barker's complaint is that the State has improperly withheld evidence, such as records interviews with co-defendants, the search warrants, documents purportedly linking him to his girlfriend's residence where the THC was found, reports by investigators such as Vanscyoc and Knaus, and records from eBay that were cited in Vanscyoc's search warrant affidavit. *Id.* at 4–5, 9, 19. Indeed, according to Barker, the state prosecutor and the judge at one point falsely claimed that a co-defendant interview never occurred. *Id.* at 19.

Barker reports that Saldana engaged in malpractice and was as not cooperative in helping him obtain originals of the search warrants. *See id.* at 6–9. On October 5, 2015, attorney Mark Nielsen ("Nielsen") was substituted for Saldana, but, on February 16, 2016, Nielsen withdrew as well.[2] Barker claims that Nielsen did not properly discharge his duties either, alleging that Nielsen failed to file several motions, failed to diligently pursue original, certified copies of the search warrants, and failed to help Barker's father reclaim the surveillance equipment which the officers had seized

---

[2] At least seven other attorneys have represented Barker since Nielsen withdrew.

during their search. *Id.* at 9–11. Nielsen produced search warrants to Barker, but according to Barker, they are inconsistent with prior copies of the same warrants. *Id.* at 11. He accuses Nielsen of "corruption." *See id.*

On August 1, 2016, the case was transferred to Judge Faye Flancher ("Judge Flancher"). Barker says that this reassignment was improper because Judge Flancher signed one of the warrants he sought to challenge. *Id.* at 8. He filed several motions asking the judge to recuse herself, but all were denied. *See id.*

Barker was eventually released on bond after his probation revocation proceedings were dismissed. *Id.* at 12. He and his new lawyer, Toni Young ("Young"), went to the Racine County courthouse on three occasions in 2016 to track down the long-sought original, certified search warrant records. *Id.* Barker asserts that the Racine County Circuit Court clerical staff were unhelpful. *Id.* at 12–16.

He also alleges that three of the clerks—Amy Vanderhoef ("Vanderhoef"), Victoria Worden ("Worden"), and Catlyn Presser ("Presser")—were caught on audio and video recordings fabricating or doctoring search warrant records. *Id.* at 14–16. Young and Barker inspected the records these clerks provided and suspected they had been manipulated because they contained many errors and inconsistencies. *Id.* at 15. Further, he says that the deputy clerk, Tracey Kutch ("Kutch"), left an "incriminating" comment on Facebook in connection with a documentary trailer Barker later released. *Id.* at 15.

In two separate encounters with Racine County clerical staff, Barker accuses Brian Graziano ("Graziano") of refusing to certify certain records because he said they were not part of a Racine County case. *Id.* at 19–20. Barker, of course, did not understand this, as his prosecution is proceeding

in Racine County Circuit Court. *See id.* He also alleges that Samuel Christensen ("Christensen") did not reply to an email he once sent inquiring about whether certain documents had been filed with the state court. *Id.* at 19.

On August 19, 2016, Judge Flancher allowed Hanson to withdraw and appointed Walworth County Assistant District Attorney Haley Jo Johnson ("Johnson") as a special prosecutor. *Id.* at 17–18. Barker says that this was done without following the procedures for such an appointment under Wisconsin statute, including approval of the appointment through the Wisconsin Department of Administration. *Id.*

Through the proceedings, Judge Flancher denied numerous motions filed by Barker and his counsel. These included motions to modify his bond conditions, motions to suppress, motions for sanctions, motions to dismiss, and motions to recuse. *See id.* at 18–22. In December 2017, she also ruled that Barker was competent to proceed *pro se*. In that same month, Barker reports that he had additional significant difficulties reviewing search warrant records and other records being held at the Racine County Sheriff's Office. *Id.* at 20–21. From the Court's review of publicly available state court records, it appears that Barker's jury trial is scheduled to begin June 6, 2018.

In the end, Barker's complaint can be best summarized as an effort to uncover alleged ongoing misconduct by court officials, government and private lawyers, and law enforcement officers to cover up their forging of search warrants, lying in supporting affidavits, and fabricating evidence that set off Barker's prosecution. *See id.* at 23. Barker suspects that these persons are denying him his constitutional rights out of fear of punishment if their misdeeds come to light. *Id.*; (Docket #29 at 16).

3.      ANALYSIS

Barker's catalog of alleged misconduct by every person associated with his criminal case gives rise to very few colorable federal claims, and none that can proceed prior to the conclusion of the state criminal proceedings. The Court will first address deficiencies with respect to the bases for federal jurisdiction in this case, then the problems with the types of relief Plaintiff seeks, then the difficulties as to the naming of certain defendants. Finally, the Court will explain why this case must be stayed until the conclusion of the state criminal proceedings.

### 3.1      Bases for Federal Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party asserting the court's jurisdiction bears the burden of establishing its existence. *Id.* A federal court's subject-matter jurisdiction is generally limited to two types of suits: (1) those between citizens of different States, called "diversity" jurisdiction, pursuant to 28 U.S.C. § 1332; and (2) those involving causes of action arising under federal law, known as "federal question" jurisdiction, pursuant to 28 U.S.C. § 1331.

Against these principles, the Court evaluates its jurisdiction. Although Barker does not attempt to rest subject-matter jurisdiction on Section 1332, it is worth noting at the outset that diversity is lacking in this case. Barker and all of the Defendants (or at least most of them) are citizens of Wisconsin. Because parties on both sides of the case are citizens of the same State, there can be no diversity jurisdiction. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006).

The Court now considers Barker's cited bases for federal question jurisdiction over his claims. (Docket #10 at 1). First, Barker asserts violations of his civil rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, arising from "unreasonable search and seizure," "tampering with public records and notices," "simulating legal process," "malicious prosecution," "judicial misconduct," "police misconduct," and "attorney malpractice." *Id.* Such claims are raised in federal court under 42 U.S.C. § 1983. To state a claim for relief under Section 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The viability of Barker's constitutional claims will be addressed in greater depth below with respect to each category of defendants. For now, it is enough to observe that a federal action could be based on alleged constitutional violations pursuant to Section 1983.

However, every other basis for federal question jurisdiction cited in the amended complaint falls short. The first is 28 U.S.C. § 1455, which governs the procedure for removal of state criminal proceedings to federal court. It is not itself a grant of federal jurisdiction, and the request to remove the Racine County prosecution to this Court is without merit, as will be explained below. *See infra* Part 3.2.

Barker also alleges that this Court has jurisdiction pursuant to the following federal criminal statutes: 8 U.S.C. § 1342(c), which imposes criminal penalties for "bringing in and harboring certain aliens," and 18 U.S.C. § 242, which criminalizes the "deprivation of rights under color of

law." As a private citizen, Barker does not have authority to enforce either of the above-cited federal criminal laws in a civil action. *Ash v. Bias*, No. 12-CV-11, 2014 WL 3353251, *4 (E.D. Wis. July 9, 2014) (citing *Lovelace v. Whitney*, 684 F. Supp. 1438, 1441 (N.D. Ill. 1988)) (holding that "18 U.S.C. § 242. . .is a criminal statute which provides no private cause of action"); *see also Ragsdale v. Turnock*, 941 F.2d 501, 509 (7th Cir. 1991) (Posner J., concurring in part and concurring in the judgment) ("[P]rivate persons have no right. . .to enforce criminal or other regulatory statutes, unless of course the statutes also create private rights of action[.]")

Next, Barker purports to sue for violations of several Wisconsin constitutional provisions and criminal statutes. *See* (Docket #10 at 1); Wis. Stats. §§ 946.68(1r)(c) (simulating legal process), 946.72 (tampering with public records and notices), 946.12(1)–(3) (misconduct in public office), 943.39(2)–(3) (fraudulent writings). He also references Wis. Stat. § 968.02, which sets forth the authority for a district attorney to issue criminal charges, and Wis. Stat. § 757.19(2)(d), which relates to the disqualification of a judge. As with federal criminal statutes, Barker, as a private person, has no automatic right to enforce Wisconsin statutes unless authorized by the Wisconsin legislature. *See* Wis. Stat. § 968.02(1); *Grube v. Daun*, 563 N.W.2d 523, 526 (Wis. 1997). None of the cited statutes authorize a private right of action, and Barker makes no effort to argue otherwise.

Moreover, violations of state law or the state constitution do not themselves give rise to federal jurisdiction. Instead, there must be some established basis for the district court to exercise subject-matter jurisdiction over the case, such an alleged violation of federal law or diversity of citizenship. No such jurisdictional hook attaches to these state-law claims,

and the Court would also decline to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367(a) even if they were viable.

Thus, the Court finds that there is no proper ground for federal subject-matter jurisdiction in this case except for claims based on violations of Barker's constitutional rights made pursuant to Section 1983.

**3.2    Claims for Relief**

The Court next considers the specific items of relief Barker requests and will dismiss those that are wholly without merit. This examination overlaps somewhat with the prior discussion of subject-matter jurisdiction, but in the interest of completeness, the Court will lay out its full analysis.

In his amended complaint, Barker asks for the following items of relief: (1) removal of his state criminal prosecution to this Court; (2) that this Court pursue criminal prosecutions of the defendants; and (3) money damages, including "compensatory, punitive, and consequential damages, as well as litigation expenses including attorney's fees, costs, and disbursements[.]" (Docket #10 at 24). The Court will discuss each category in turn.

First, this Court has no authority to remove the pending Racine County prosecution to this Court. Removal of a state criminal proceeding to federal court is available only in extremely limited circumstances not present here. 28 U.S.C. § 1455 provides the procedure for removal of a state criminal prosecution to the federal district court for the district in which the state criminal prosecution is pending. Any person desiring to remove a state criminal prosecution must first file a notice of removal in the district court pursuant to Federal Rule of Civil Procedure 11, containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders from the state prosecution. *See* 28 U.S.C. §

1455(a). The notice of removal must be filed not later than thirty days after the arraignment in the state court, or at any time before trial, whichever is earlier. *Id.* § 1455(b)(1); *State of Ind. v. Haws*, 131 F.3d 1205, 1209 (7th Cir. 1997). Further, the notice of removal must include all grounds for removal, and failure to state grounds that exist at the time of removal constitutes a waiver of such grounds. 28 U.S.C. § 1455(b)(2).

Barker did not file a notice of removal in the state criminal case in conformity with Section 1455. His attempt at removal through the filing of this civil action is not the correct method to obtain removal of the state action. Further, while Section 1455 prescribes procedures for removal, it does not itself create an entitlement for a state criminal defendant to remove any criminal proceeding he likes. *Illinois v. Sadder-Bey*, No. 17-cv-4999, 2017 WL 2987159, at *2 (N.D. Ill. July 13, 2017). A state criminal defendant must point to some other statute that would permit or require removal of the state proceeding.

Barker cited no such statutes, and none arguably apply to his circumstances, as he is not a federal officer, 28 U.S.C. § 1442(a), nor is he a member of the armed forces, *id*. §§ 1442a, 1443(2). *See also United States v. Jones*, Case No. 17-Cr-207-pp, 2017 WL 6375747, at *2–3 (E.D. Wis. Dec. 13, 2017). Additionally, Barker has not alleged that he was denied or cannot enforce a right under an equal-protection law defined specifically in terms of racial equality, as would support removal under 28 U.S.C. § 1443(1). *Georgia v. Rachel*, 384 U.S. 780, 791 (1966). General sources of equal rights, like the Fourteenth Amendment's Due Process Clause, are not sufficient to support removal under Section 1443(1). *Fenton v. Dudley*, 761 F.3d 770, 773 (7th Cir. 2014).

Barker alleges that he has reason to suspect that the State is denying him justice out of fear that dismissal of the criminal action will subject Defendants to criminal penalties and will enable him to pursue a lawsuit against them. Nowhere does he complain of racial discrimination. His general accusations of denial of civil rights do not justify removal, even if they had been properly presented in a timely notice of removal. Nor does it appear that Barker cannot adequately vindicate his rights in state court, which is a second requirement for removal under Section 1443(1). *Id.* at 774. Mere suspicion that state officers have acted corruptly or will prevent a fair trial is not enough. *Id.*; *City of Greenwood v. Peacock*, 384 U.S. 808, 825 (1966). Thus, Barker cannot succeed in his request for removal of the Racine County prosecution.[3]

Second, this Court cannot pursue criminal charges against any Defendant. The Court is not an executive body tasked with enforcing the law or prosecuting lawbreakers, and certainly does not exist to address claimed violations of state criminal law. Prosecutorial decisions with regard to state law are made by state prosecutors. *Flynn v. Murray*, No. 10-1391, 2010 WL 5574458, at *1 (C.D. Ill. Jan. 7, 2010); *see also Diamond v. Charles*, 476 U.S. 54, 64–65 (1986) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Finally, Barker's request for damages for civil rights violations under Section 1983 fares slightly better. Barker is permitted under Section 1983 to ask for compensatory and punitive damages. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *Smith v. Wade*, 461 U.S. 30, 56 (1983). He may also be entitled to

---

[3]As noted above, Barker cited a host of other federal and Wisconsin statutes as bases for removal. (Docket #10 at 24); *supra* Part 3.1. None have any bearing on the case, and none authorize removal.

his costs and attorney's fees if he succeeds in this litigation. *See* Fed. R. Civ. P. 54(d)(1); 42 U.S.C. §§ 1988(b), 1997e(d). But he is not permitted to seek "consequential damages," as those are a form of relief reserved for breach-of-contract cases, *see Rexnord Corp. v. DeWolff Boberg & Assoc., Inc.*, 286 F.3d 1001, 1004 (7th Cir. 2002), or "disbursements," a term he does not define.[4]

### 3.3 Proper Defendants

In the preceding analyses, the Court established that Barker may only seek monetary redress for constitutional violations pursuant to Section 1983. The Court will next evaluate whether there are clear reasons to dismiss any of the host of named defendants, including issues regarding stating viable claims and immunities.

For this analysis, the defendants can be organized into several groups. First, the Court will group together the two named counties of the State of Wisconsin, Racine County and Walworth County (the "County Defendants"). The second category of defendants has one member: Judge Flancher. Third are Barker's criminal defense attorneys, Saldana and Nielsen (the "Defense Attorneys"). Next are officials of the Racine County Circuit Court, including Vanderhoef, Kutch, Presser, Worden, Graziano, and Christensen (collectively, the "Clerk Defendants"). Fifth, the Court will analyze the claims against the state prosecutors, Hanson and Johnson (the

---

[4]In support of his claimed categories of damages, Barker cites 42 U.S.C. § 1988, which partially governs awards of attorney's fees and other litigation expenses in prisoner cases. (Docket #10 at 24). He also cites two totally irrelevant authorities: 49 C.F.R. § 24.107, which is a regulation promulgated by the Department of Transportation that provides for reimbursement of expenses in land acquisition cases, and Wis. Stat. § 32.28, which apportions costs and litigation expenses in eminent domain cases. This latter statute incorporates the word "disbursements," which may explain Barker's use of the term, but his case has nothing whatsoever to do with eminent domain.

"State Prosecutors"). Finally, the Court will address the state law enforcement officers, which include Vanscyoc, Vandervest, and Knaus (the "Officer Defendants").

### 3.3.1   The County Defendants

Barker fails to state a constitutional claim against either of the counties named as defendants in this case. A municipal entity may not be held liable pursuant to Section 1983 solely because it employed a constitutional tortfeasor. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, a municipality can "be held liable under § 1983 only for its own violations of federal law." *L.A. Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). To invoke *Monell* liability, the plaintiff must demonstrate that there was an "official policy, widespread custom, or action by an official with policy-making authority [that] was the 'moving force' behind his constitutional injury." *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) (quotation omitted).

Barker hardly mentions the County Defendants in his rambling allegations, making it difficult to discern which of his civil rights he believes they violated. This, in turn, means that his allegations fall well short of charging that any policy, practice, or custom of the County Defendants was the moving force behind his alleged injuries. To the extent Barker believes he can sue the counties simply because they employed the other alleged wrongdoers, he is mistaken. *See Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Moreover, the actions of those officials in Barker's own case cannot alone meet the high bar required to show a "widespread" practice of similar unlawful actions. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Finally, the County Defendants each argued that no *Monell* claim could be maintained

against them, and Barker's largely incoherent response brief failed to cogently respond to those arguments. Thus, the Court finds that on top of the deficiencies in Barker's pleading, he has conceded the County Defendants' argument on this point. *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999); *Bonte v. U.S. Bank N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). As a result, these Defendants will be dismissed.

### 3.3.2 Judge Flancher

Barker takes exception to most of Judge Flancher's conduct with respect to his criminal case, including that she signed a search warrant, denied many of his motions, permitted Hanson to withdraw and appointed a special prosecutor, tried to force him to sign an attorney rights waiver form, forced him to undergo a competency evaluation, deducted money from his cash bond to pay for copies of discovery materials, stated on the record that an interview never happened, even though the interview was noted in a supplementary investigative report, and refused to ask Vanscyoc whether he interviewed co-defendant Josh Golden.

Barker cannot maintain a claim against Judge Flancher for any of this purported misconduct, assuming it in fact occurred. It has long been established that judges, being sued solely for judicial acts, are protected by absolute judicial immunity. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Forrester v. White*, 484 U.S. 219, 225–29 (1988); *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001). Without doubt, the actions of Judge Flancher that form the basis of Barker's claims are all judicial acts. Judge Flancher is thus cloaked with judicial immunity as to each of Barker's claims against her, and she must be dismissed as a defendant. *Myrick v. Greenwood*, 856 F.3d 487, 488 (7th Cir. 2017).

### 3.3.3   The Defense Attorneys

Barker cannot assert claims under Section 1983 against his former counsel. Section 1983 cannot be used to challenge actions undertaken as part of "a lawyer's traditional function[ ] as counsel to a defendant in a criminal proceeding," because such an attorney does not act "under color of state law." *Polk Cnty. v. Dodson*, 454 U.S. 312, 324–25 (1981). The acts that form the basis of Barker's claims against his lawyers—generally, their attempts to obtain discovery materials from the State and their efforts to file motions on Barker's behalf—fall squarely within the traditional function of a lawyer. They are, therefore, not amenable to suit under Section 1983.

Further, although Barker at times alleges that his attorneys conspired with state officials to cover up their misconduct, (Docket #29 at 14–15), he cannot maintain a civil conspiracy claim against them pursuant to Section 1985(3). That Section permits a private actor to be held liable when he conspires with a state actor to deprive the plaintiff of equal protection of the law. 42 U.S.C. § 1985(3); *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009). However, the conspiracy must be motivated by racial or other class-based animus. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985). Nothing in Barker's complaint suggests that anyone, including his lawyers, acted because of class-based hostility; indeed, he stresses that the purpose of the conspiracy was to cover up forgeries and fabrications by state officials. There can be no Section 1985(3) claim on these facts.

At most, it seems Barker might have a claim of attorney malpractice against his former lawyers, but that is a matter of state, not federal, law. The Court will not consider such a claim when there are no federal causes of action to be maintained against these Defendants. *See* 28 U.S.C. § 1367(c);

*Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 285 (7th Cir. 2007). As a consequence, both of these Defendants will be dismissed.[5]

### 3.3.4    The Clerk Defendants

Barker's claims against the Clerk Defendants also largely fail. Court staff can in certain instances claim the same immunity as judges, *see supra* Part 3.3.2, including when they undertake administrative actions pursuant to the direction of a judicial officer. *See Kincaid v. Vail*, 969 F.2d 594, 600–02 (7th Cir. 1992); *Snyder*, 380 F.3d at 286–87. Of course, courts distinguish between a judge's order and the manner in which the order is carried out. *See Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001). Thus, while a clerk could not be liable for the act he was ordered to perform, he or she would not be immune from liability for purposeful or reckless wrongdoing in the course of completing the task. *See Lowe v. Letsinger*, 772 F.2d 308, 313 (7th Cir. 1985); *Kincaid*, 969 F.2d at 601.

To the extent that the Clerk Defendants were simply carrying out their duties as directed by the state court, they are likely protected by immunity. However, Barker alleges that some of the Clerk Defendants, including Vanderhoef, Presser, and Worden, engaged in intentional misconduct in the course of performing those duties, including doctoring or fabricating records. This conduct would likely not be protected.

There is another problem with the claims that must be addressed, however. The Supreme Court and the Seventh Circuit instruct that a

---

[5]Attorney Nielsen did not enter an appearance in this case until May 11, 2018. (Docket #39). Consequently, his motion to dismiss is not fully briefed. *See* (Docket #40). Because the reasoning for dismissal as to Saldana applies equally to him, the Court will dismiss both Defendants despite this procedural limbo.

constitutional claim premised on a single set of circumstances should be analyzed under the most applicable constitutional provision. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005); *Graham v. Connor*, 490 U.S. 386, 395 (1989). Normally, this doctrine is employed to dismiss a substantive due process claim when it is better analyzed under an explicit source of constitutional protection located elsewhere in the Bill of Rights. *Graham*, 490 U.S. at 395. However, it is also useful when, as here, a plaintiff lists a number constitutional provisions that he believes govern one act or related series of acts. *Gerhartz v. Richert*, No. 12-CV-731, 2013 WL 4498752, at *5 (E.D. Wis. Aug. 20, 2013), *aff'd*, 779 F.3d 682 (7th Cir. 2015). In that instance, the court has discretion to analyze the alleged misconduct under the most salient constitutional provision or provisions and dispense with the rest. *Id.*

The Court finds that the most salient constitutional provision governing the conduct of the Clerk Defendants is likely the Fourteenth Amendment's Due Process Clause. Although the parties did not identify, and the Court cannot locate, any on-point authority describing the source and nature of the Clerk Defendants' constitutional obligations, it seems best conceived as under the rubric of general due-process principles. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).[6]

---

[6]Barker mentions that his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments were violated by the Clerk Defendants, but it is not clear that all apply. The Clerk Defendants did not deny him access to the courts or curtail his speech, in contravention of the First Amendment. Likewise, they had no part in the searches or fabricating evidence used against him, so the Fourth Amendment does not seem to have any bearing. Notably, while Barker alleges that the Clerk Defendants manufactured or altered search warrant records to provide to him, there is no allegation that these forged documents were used against him in the prosecution. Thus, whether conceived under a false arrest, false imprisonment, or malicious prosecution theory, it would not appear that the

Within that framework, several of the Clerk Defendants can be dismissed at this juncture because Barker fails to state an actionable claim against them. This includes Graziano's alleged failure to certify certain court records. It appears he was simply doing his job, and at worst, he was negligent in failing to realize the source of the records he was asked to certify. Negligent misconduct is categorically beneath the threshold required to state a due process claim. *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017). Likewise, Barker does not say that Kutch fabricated any records, only that she was unhelpful and that she left an "incriminating" comment on a social media site. Neither rises to the level of culpability required by the Fourteenth Amendment. Finally, Barker only mentions Christensen once in the entire complaint, and only then in relation to a single email about whether certain documents had been filed. Again, this is not the sort of reckless or intentional misconduct that supports a due process claim. Thus, these three Defendants will be dismissed, for even if they are not immune to suit, their conduct was at worst negligent.

That leaves the three Clerk Defendants who allegedly fabricated search warrant records: Vanderhoef, Presser, and Worden. Their conduct certainly appears to be intentional as Barker describes it. However, the Court is uncertain what liberty or property interest Barker might have been

---

Fourth Amendment has anything to say about this conduct. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017); *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007).

Similarly, the Fifth Amendment Due Process Clause does not govern state officials' conduct; that is the job of the Fourteenth Amendment Due Process Clause. Finally, the Sixth Amendment's Confrontation Clause is not at issue with respect to the Clerk Defendants, as there is no plausible suggestion that they interfered with Barker's right to confront the witnesses against him. Thus, Barker has not stated any actionable claim against these Defendants under these constitutional provisions.

deprived of as a result of their conduct. *Zinermon*, 494 U.S. at 125 (noting that due process protects citizens from the deprivation of recognized liberty and property interests). They were not the ones detaining him, which is usually the identifiable interest in such cases. *See Bianchi v. McQueen*, 818 F.3d 309, 318 (7th Cir. 2016). However, assuming they doctored records, their conduct might have prolonged his detention because it delayed the day he was able to show that the warrants were invalid. For the present, the Court need not decide this issue since, as will be explained further below, the more difficult questions in this case are best reserved until after the conclusion of Barker's criminal proceedings.[7]

### 3.3.5   The State Prosecutors

The Court now turns to the State Prosecutors. First, Barker claims that Hanson (1) omitted investigatory reports from discovery, (2) failed to comply with a discovery request for copies of the search warrants, and (3) conspired with Vanscyoc to plant THC in evidence in order to get his probation revoked. With respect to Johnson, Barker alleges that she (1) appeared as a special prosecutor without required approval and therefore was complicit with Hanson and Judge Flancher "in the criminal act of simulating legal process," (2) stated on the record that an interview never happened, even though the interview was noted in a supplementary investigative report, and (3) never responded to his motions and briefs in January 2018. *See* (Docket #10 at 18).

---

[7]Notably, the Clerk Defendants do not cogently argue that Barker has failed to state a claim for relief, except to say that his statements are "conclusory." (Docket #26 at 9). Such underdeveloped argument cannot set the Court down the path of deciding what the claims are, and why they might be meritless, without the aid of adversarial development.

For nearly all of these acts, the State Prosecutors enjoy prosecutorial immunity from suit.[8] A prosecutor enjoys absolute immunity from suit for actions taken insofar as she is "act[ing] within the scope of [her] prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). For instance, immunity encompasses "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek indictment has been made." *Imbler*, 424 U.S. at 420. However, it does not protect most pre-arrest investigatory conduct. *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014); *Bianchi*, 818 F.3d at 318.

In this case, Barker does not challenge any acts by Hanson and Johnson that are not prosecutorial acts, with two exceptions. First, he alleges that Hanson conspired with Vanscyoc to plant THC in evidence in order to bolster the chances of revocation. True, as Defendants point out, Barker's allegations of conspiracy are light. For instance, he does not allege facts tending to show that Hanson and Vanscyoc reached an agreement to undertaken this unlawful act. *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988); *McCann v. Mangialardi*, 337 F.3d 782, 789–90 (7th Cir. 2003). But Barker is proceeding *pro se*, and so the Court must not only draw factual inferences in his favor, it must liberally construe his allegations. *Erickson*, 551 U.S. at 94. In view of the leniency shown to *pro se* litigants in alleging claims, the Court finds Barker's allegations sufficient at this early juncture

---

[8]The State Prosecutors claim that they enjoy Eleventh Amendment immunity from suit, (Docket #12 at 12), but that immunity would only apply if they were being sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Barker challenges their personal misconduct and is therefore suing them in their individual capacities. The Eleventh Amendment does not touch such claims.

to state a claim for a Section 1983 conspiracy to violate his Fourth Amendment rights. *See Buckley*, 509 U.S. at 275 (fabricating evidence to present to grand jury not protected by prosecutorial immunity because not part of prosecutor's role as State advocate).[9]

Second, Barker alleges that Hanson and Johnson covered up or failed to disclose certain evidence. This is a due process claim for a violation of the State's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Intentionally withholding material, exculpatory evidence—including co-defendants' interviews, investigatory reports, and, perhaps, forged search warrant documents showing that the searches leading to Barker's prosecution were all invalid—would violate that duty, as long the violation resulted in a deprivation of liberty. *Cairel v. Alderden*, 821 F.3d 823, 832 (7th Cir. 2016). Indeed, the Officer Defendants would be on the hook, too, if they withheld the evidence from Hanson and thereby prevented her from disclosing it. *Id.* However, the problem with Barker's *Brady* claim is that such a claim cannot proceed if the evidence in question was disclosed in time for Barker to make use of it at trial. *Gill*, 850 F.3d at 343. As it is clear that any withholding of evidence has been discovered and remedied, and Barker's trial is still months away, he cannot proceed on a *Brady* claim. *Id.*; *see also Armstrong v. Daily*, 786 F.3d 529, 553 (7th Cir. 2015) (*Brady* claim

---

[9]Of course, if Barker's allegation is really that Hanson conspired with Vanscyoc merely by charging Barker with THC related crimes, such a charging decision is protected by prosecutorial immunity. *Kalina v. Fischer*, 522 U.S. 118, 129 (1997). But the Court cannot draw that inference against Barker at this stage of the proceedings. And, in any event, to the extent she averred that Vanscyoc had the facts right to support an arrest or probable cause determination, her immunity might not protect her. *See id.* at 130.

could proceed despite dismissal of charges where evidence was actually destroyed).

Thus, only Hanson may remain in this case, as the evidence fabrication claim is the only one which is both facially plausible and for which she may not enjoy immunity. Johnson will be dismissed.

### 3.3.6   The Officer Defendants

Finally, the Court will address the Officer Defendants. First, Barker claims that Vanscyoc lied in search warrant affidavits, doctored his own reports, and conspired with Hanson to plant THC at Barker's girlfriend's house in order to incriminate him. Similarly, Barker alleges that Knaus made some false insinuations in his report to link Barker to his girlfriend's house. Finally, Barker accuses Vandervest of fabricating information in a search warrant affidavit and in a report about the evidence seized from his girlfriend's home.

A few claims can potentially be premised on this alleged misconduct, all arising under the Fourth Amendment. *See supra* Part 3.3.4. The Fourth Amendment protects citizens from unreasonable searches and seizures. *Angara v. City of Chicago*, 897 F. Supp. 355, 358 (N.D. Ill. 1995). First, Barker plausibly states a Fourth Amendment claim against the Officer Defendants for executing unsigned warrants that were riddled with material errors and omissions. Second, as to the Officer Defendants that fabricated evidence and used it as a pretext for his arrest, detention, and revocation and prosecution, recent authority from the Supreme Court holds

that a Fourth Amendment claim could lie. *Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017).[10]

Third, a warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue. *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003); *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Thus, even if a criminal defendant can demonstrate that the attesting officer made a false statement (or omitted a material fact), the

---

[10]*Manuel* overturned long-standing Seventh Circuit precedent distinguishing between detention before the institution of legal process—*i.e.*, before a probable-cause determination by a judge—and detention after legal process. Prior to *Manuel*, in the Seventh Circuit the former gave rise to Fourth Amendment issues, while the latter could be remedied only under the Fourteenth Amendment Due Process Clause. *Manuel*, 137 S. Ct. at 916. In practice, this meant that due-process claims based on unlawful detention after the start of legal process were often barred because state law afforded an adequate alternative remedy. *See Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001). This principle would not forestall a Fourth Amendment claim, however. *See McCullah v. Gadert*, 344 F.3d 655, 660 (7th Cir. 2003) (holding that a Fourth Amendment claim under Section 1983 is not barred because of a state law analog).

Additionally, plaintiffs making a due-process claim in this situation would have to demonstrate that they were actually deprived of liberty as a result of the fabricated evidence. *Bianchi*, 818 F.3d at 319. "[I]f an officer (or investigating prosecutor) fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty interest." *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012). Moreover, a claim of malicious prosecution under the Fourth Amendment as recognized in other Circuits requires termination of the prosecution in the plaintiff's favor. *See Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016). Whether these requirements survive *Manuel* or would be applied in a Seventh Circuit malicious prosecution claim under the Fourth Amendment is unclear; the parties have come nowhere near these issues in their briefs. In view of Barker's *pro se* status and the need for a stay for the foreseeable future, these matters can be tabled for later consideration.

court must nevertheless consider whether the content of the affidavit, setting aside the false material (or including the omitted material), is sufficient to establish probable cause. *Franks*, 438 U.S. at 156. If it is not, the search warrant must be voided and the fruits of the search excluded. *Id.* Here, if the Officer Defendants' alleged false statements are not sufficient to result in voiding the search warrants and excluding the evidence obtained from the searches, then Barker will have suffered no injury as a result of the false statements and he does not have a constitutional claim. If they are, Barker may have a claim.

Thus, it appears that Barker may proceed on claims arising under the Fourth Amendment against the Officer Defendants.

### 3.4    Service, Plausibility, and *Younger* Abstention

From the foregoing analysis, the Court has determined that only a few defendants and claims can potentially remain in this case. First, the only basis for federal subject-matter jurisdiction is an action pursuant to 42 U.S.C. § 1983 for civil rights violations. Second, Barker is entitled only to seek damages through his Section 1983 action. Finally, the defendants who are not immune or otherwise obviously not amenable to suit under Section 1983 are Vanderhoef, Presser, Worden, Hanson, Vanscyoc, Knaus, and Vandervest. As to these Defendants and the claims asserted against them, the Court must address a number of other issues before closing.

First, some of the claims against these Defendants might not survive a plausibility review under *Twombly* and *Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555. It is difficult to discern at this juncture, in light of Barker's largely incoherent allegations and Defendants' underdeveloped arguments, whether there are actionable claims to be made against the remaining Defendants. However, as explained above, the

Court will save further briefing on this and the other matters discussed below for a later day, as it is beyond dispute that the case must be stayed until the completion of Barker's criminal proceedings.

Second, after the stay in this matter is lifted, the Court will need to consider an additional threshold issue beyond the plausibility of the claims in light of the state criminal proceedings. Some of Barker's claims may be barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), which holds that a claim for damages may not be pursued if its success would necessarily imply the invalidity of the criminal conviction or sentence. However, *Heck* does not automatically preclude Fourth Amendment claims related to conduct underlying a conviction. *Wallace*, 549 U.S. at 394; *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). As long as the plaintiff's claims do not impugn the validity of his conviction or sentence, courts can entertain Section 1983 suits based on police investigative conduct that violates the Fourth Amendment. *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008); *Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir. 1998); *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995) ("Because an illegal search or arrest may be followed by a valid conviction, a conviction generally need not be set aside in order for a plaintiff to pursue a § 1983 claim under the Fourth Amendment.").

It is not clear at this time whether or to what extent success on Barker's remaining claims would impugn the validity of his conviction, as the trial has not yet occurred and no conviction resulted. It is fairly likely that a conviction will give rise to a *Heck* bar as to at least some of the claims, since if the alleged false statements and fabricated evidence are excluded, it would likely destroy the State's case and thereby invalidate Barker's conviction. Conversely, if Barker is acquitted, the potential for a *Heck* bar evaporates entirely. Discretion therefore counsels in favor of waiting for the

conclusion of the trial, when the Court will be in a position to assess what claims, if any, can proceed past *Heck*.

Third, it should be noted that nearly every Defendant challenges the propriety of service of process. All say that they were not served in conformity with federal or state law, and that Barker's attempt to serve them through the Racine County Clerk's Office was improper because that office is not authorized to accept service on their behalf. (Docket #12 at 6–8); (Docket #26 at 4–7); Wis. Stat. § 801.11. True, once challenged, Barker bore the burden to prove that service was properly made. *Koss Corp. v. Pilot Air Freight Corp.*, 242 F.R.D. 514, 516 (E.D. Wis. 2007). And he made no effort in his response brief to address the issue of service. But Barker is *pro se*, and it may be that his procedural foibles can be forgiven. Moreover, a problem with service will likely only lead to Barker re-serving the Defendants in the proper fashion. This issue is therefore much less pressing than the looming parallel state criminal action. Any problems with service can be raised again after the stay in this matter is lifted.

With these three issues acknowledged, the Court can now close by addressing the need for a stay of the present proceedings. The Court will abstain from hearing Barker's damages claims while his criminal prosecution is ongoing, pursuant to the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 53 (1971); *Simpson*, 73 F.3d at 137 ("[A]bsent extraordinary circumstances federal courts should abstain from enjoining ongoing state criminal proceedings."). The Seventh Circuit has counseled that a judgment on the state defendant's federal damages action before the conclusion of his prosecution might undermine the state courts' ability to fully and freely consider the issues before them. *Simpson*, 73 F.3d at 138. Moreover, the state criminal defendant has the ability to litigate his

constitutional claims before the state courts if he chooses. See *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013). As a result, the Court of Appeals instructs that district courts should abstain from hearing such claims "while the case works its way through the state appellate process." *Simpson*, 73 F.3d at 138. Although the *Simpson* court was faced with a defendant who had been convicted at trial and was in the process of his state appeal, its logic applies with equal force to Barker, who awaits his trial in a few months. Because the state case may be nearing its end, and because this matter is still only in its "embryonic" stage, *see Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017), the Court will abstain until the conclusion of the trial and any attendant post-trial proceedings, including any appeal or collateral review.

## 4.    CONCLUSION

Barker's campaign to undermine the ongoing state criminal proceedings against him is largely meritless. Most of the claims he tries to assert are not cognizable, and most of the defendants are immune from the types of claims he tries to bring. As such, Defendants' motions to dismiss must, to a large extent, be granted. Only as to the narrow class of Fourth and Fourteenth Amendment claims against some of the Clerk Defendants, Hanson, and the Officer Defendants may Barker proceed at present.

However, as the Court has explained, it must stay this action pending final resolution of Barker's prosecution in Wisconsin state court. *See Wallace*, 549 U.S. at 393–94 ("If a plaintiff files a false-arrest claim before he has been convicted . . ., it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case . . . is ended. . . . If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise,

the civil action will proceed, absent some other bar to suit."). This matter will be administratively closed in the interim. Barker must provide updates on the status of his criminal case **every thirty (30) days**. If he does not, this matter will be dismissed. Barker must further notify the Court upon the conclusion of the prosecution and any criminal appeal and/or post-conviction proceedings that might follow.

Accordingly,

**IT IS ORDERED** that Defendant Faye Flancher, Patricia J. Hanson, and Haley Jo Johnson's motion to dismiss the first amended complaint (Docket #11) be and the same is hereby **GRANTED in part** and **DENIED in part without prejudice** as stated herein;

**IT IS FURTHER ORDERED** that Defendant Faye Flancher, Patricia J. Hanson, and Haley Jo Johnson's motion to dismiss the original complaint (Docket #3) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant David Saldana's motion to dismiss the first amended complaint (Docket #16) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant David Saldana's motion to dismiss the original complaint (Docket #6) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant Walworth County's motion to dismiss the first amended complaint (Docket #22) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Samuel Christensen, Brian Graziano, Thomas Knaus, Tracey Kutch, Catlyn Presser, Racine County, Amy Vanderhoef, Donald Vandervest, Brian Vanscyoc, and Victoria Worden's motion to dismiss the first amended complaint (Docket

#25) be and the same is hereby **GRANTED in part** and **DENIED in part without prejudice** as stated herein;

 **IT IS FURTHER ORDERED** that Defendant Mark Nielsen's motion to dismiss the first amended complaint (Docket #40) be and the same is hereby **GRANTED**;

 **IT IS FURTHER ORDERED** that Plaintiff's motion for an evidentiary hearing (Docket #33) be and the same is hereby **DENIED**;

 **IT IS FURTHER ORDERED** that Defendants Faye Flancher, Haley Jo Johnson, David Saldana, Mark Nielsen, Racine County, Walworth County, Tracey Kutch, Samuel Christensen, and Brian Graziano be and the same are hereby **DISMISSED** from this action;

 **IT IS FURTHER ORDERED** that this action be and the same is hereby **STAYED** pending the conclusion of Plaintiff's state court criminal proceedings;

 **IT IS FURTHER ORDERED** that Plaintiff shall provide updates on the status of those proceedings on or before the **last day of each month**;

 **IT IS FURTHER ORDERED** that Plaintiff shall notify the Court when those proceedings have concluded, and the manner in which they were concluded; and

 **IT IS FURTHER ORDERED** that the Clerk of the Court shall administratively close this action.

 Dated at Milwaukee, Wisconsin, this 21st day of May, 2018.

     BY THE COURT:

     J. P. Stadtmueller
     U.S. District Judge